IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLEG MOLDAVSKY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | No. 22-1447 |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**                                                                                    **May 19, 2023**
**U.S. MAGISTRATE JUDGE**

      Plaintiff Oleg Moldavsky appeals the Commissioner of Social Security's final decision to deny his claim for benefits. In particular, he contends that the unfavorable decision (1) improperly rejected the opinion of his treating physician, (2) failed to incorporate the disabling limitations of the consulting examiner, and (3) omitted some of his credibly established limitations in the hypothetical question posed to the vocational expert. The Commissioner disagrees, arguing that the decision to deny benefits comported with the governing regulations and is supported by substantial evidence. For the reasons that follow, I will grant Mr. Moldavsky's request for review and remand this matter to the Commissioner for further proceedings in accordance with this opinion.

    **I.**    **BACKGROUND**

        **A. Factual and Procedural History.**

      Mr. Moldavsky was born in May 1977. R. 92. He has a high school level of education, and for many years, he worked loading, unloading, and driving tractor trailers. R. 58–59. Over

the years, the pain in his lower back worsened, and in March 2015, he ultimately had to stop working as truck driver due to the pain. *See* R. 268, 342.

Relevant here, on June 10, 2019, Mr. Moldavsky applied for Social Security disability insurance benefits ("DIB").[1] R. 92–93. He alleged that he was disabled based on his lumbar radiculopathy, spinal arachnoiditis, and lumbar spinal stenosis. R. 92. His claim was initially denied on December 18, 2019, *see* R. 120–23, and again on reconsideration on August 19, 2020, *see* R. 128–30. Mr. Moldavsky then requested a hearing before an Administrative Law Judge ("ALJ"), *see* R. 133, and a telephone hearing was held on January 14, 2021, *see* R. 49–74. After this hearing, on February 17, 2021, the ALJ issued a written decision again denying Mr. Moldavsky's claim. R. 31–42. The Appeals Council denied Mr. Moldavsky's subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. *See* R. 9–10. Mr. Moldavsky now timely appeals.[2]

### B. ALJ's Decision.

The ALJ evaluated Mr. Moldavsky's claim using the five-step sequential analysis set forth in the Social Security regulations.[3] Beginning at step one, the ALJ determined that Mr.

---

[1] Mr. Moldavsky previously applied for social security benefits on October 11, 2016, a little more than a year after he stopped working. That application was denied by an ALJ on October 12, 2018, and Mr. Moldavsky did not seek further review. Instead, in June 2019, he filed a new application for benefits, which is the focus of the present appeal. When considering the most recent application, the ALJ found "no reason" to reopen the prior denial from October 2018, and therefore that decision remained effective for the period "on and before that date." R. 31. Because of this, the ALJ stressed that any discussion of evidence from the time period covered by the previous application was "limited to the purpose of providing a foundation to evaluating disability for the period following that date." *Id.*

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 3, 6.

[3] The sequential analysis requires the ALJ to evaluate (1) whether the claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering his residual functional capacity; and (5) whether the claimant can adjust to other work considering his residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (citing 20 C.F.R.

Moldavsky did not engage in substantial gainful activity from the time of his alleged onset of disability on March 26, 2015, through his date last insured on September 30, 2020.[4] R. 34.

At step two, the ALJ found that Mr. Moldavsky suffered from the following severe impairments: degenerative disc disease of the lumbar spine, disorder of the knees, and obesity. *Id.* His gastroesophageal reflux disease ("GERD"), while medically determinable, was deemed non-severe, because it is well-controlled with medication and did not cause more than minimal limitations on his ability to work. *Id.*

Moving on to step three, the ALJ concluded that none of Mr. Moldavsky's severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. R. 34–35. Specifically, the ALJ compared Mr. Moldavsky's impairments to listings 1.02 (joint dysfunction) and 1.04 (spinal disorders). *Id.*

Before reaching step four, the ALJ considered Mr. Moldavsky's residual functional capacity ("RFC").[5] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Mr. Moldavsky has the RFC to perform "sedentary work,"[6] subject to the following restrictions:

> occasional postural activities, except no crawling, kneeling, or climbing of ladders, ropes, or scaffolds; occasional use of foot

---

§ 416.920(a)(4)(i)–(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

[4] To be eligible for disability insurance benefits, the claimant "must establish that their disabling condition(s) began on or before the last day they were insured for disability purposes." 2 SOCIAL SECURITY DISABILITY CLAIMS: PRACTICE & PROCEDURE § 22:251 (2d ed. Oct. 2022 update).

[5] Residual functional capacity is defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

[6] The regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* More specifically, the Social Security Administration has instructed that sedentary work generally requires standing or walking to "total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

> controls; occasional operation of a motor vehicle; occasional exposure to vibration; and no work around hazards (e.g., heights, dangerous machinery). The work should accommodate[] use of a cane for ambulation and afford the option to stand for 3-5 minutes every thirty (30) minutes.

R. 35–40.

At step four, the ALJ found that given Mr. Moldavsky's RFC, he could not perform his past relevant work as a tractor trailer driver. R. 40. The ALJ then proceeded to step five and identified multiple jobs in the national economy that Mr. Moldavsky could perform, including brimer, circuit board inspector, and plastic design applier. R. 40–41. As such, the ALJ concluded that Mr. Moldavsky was not disabled as defined by the Social Security Act.[7] R. 41–42.

## II.   STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, any legal conclusions are

---

[7] Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

### III. DISCUSSION

Mr. Moldavsky appeals the ALJ's unfavorable decision on three grounds. First, he claims that the ALJ's reasons for rejecting the opinion of his treating physician were erroneous. *See* Doc. No. 10, at 4–17. Second, he alleges that despite partially accepting the consulting examiner's opinion, the ALJ failed to incorporate into the RFC certain disabling limitations included in the opinion. *Id.* at 18–21. Third, he argues that the ALJ improperly excluded some of his credibly established limitations from the hypothetical question posed to the vocational expert. *Id.* at 21–22. The Commissioner responds that the ALJ's decision was reasonable and supported by substantial evidence. *See* Doc. No. 11, at 6–17. After careful review, I agree with Mr. Moldavsky that the ALJ's RFC analysis was inadequate such that remand is justified.

#### A. The ALJ's evaluation of the treating physician's opinion was inadequate.

In his initial claim, Mr. Moldavsky challenges the adequacy of the ALJ's explanation for rejecting his treating physician's opinion as to his work-related abilities. *See* Doc. No. 10, at 4–17.  In response, the Commissioner contends that the ALJ's evaluation of the treating physician's opinion comported with the governing regulations and was supported by substantial evidence. Doc. No. 11, at 6–12. Having considered the parties' arguments and the administrative record, I agree with Mr. Moldavsky that the ALJ's explanation for discounting the treating physician's opinion was insufficient.

Starting in 2017, Mr. Moldavsky began treating with his primary care physician, Dr. Leonid Magidenko. *See* R. 712–13 (initial office visit note). Three years into this treatment relationship, in November 2020, Dr. Magidenko completed a medical source statement opining

on Mr. Moldavsky's ability to perform work-related functions. *See* R. 764–69. The ALJ summarized the findings from Dr. Magidenko's statement as follows:

> The claimant's treating [primary care physician], Dr. Magidenko, completed a medical source statement in November 2020 indicating that the claimant had no capacity to lift/carry any weight, could sit for three hours in an eight hour workday, stand/walk two hours, perform no postural activities, and never use foot controls, never push/pull with the upper extremities, only occasionally reach with the bilateral upper extremities, and have no exposure to hazards, temperature extremes, humidity, wetness, pulmonary irritants, or operation of a motor vehicle. He should also only be exposed to quiet environmental conditions.

R. 39 (citation omitted).

The ALJ assessed the persuasiveness of Dr. Magidenko's opinion when determining Mr. Moldavsky's RFC. *Id.* The ALJ explained that:

> The undersigned finds unpersuasive the opinion of Dr. Magidenko as it is neither well supported by nor consistent with the medical evidence of record, nor with the opinions of Drs. Goodyear, DeLeo and Park. His opinion is an extreme overestimate of the claimant's limitations in all areas (except exposure to hazards) and is not supported by the medical records, including his own, and it is not consistent with the claimant's stated ability to perform personal care activities independently, as well as operate a motor vehicle. There is no basis for his finding of limited use of the upper extremities such that would justify the exertional and manipulative limitations set forth. The medical record only briefly notes a history of a distant left shoulder rotator cuff repair, and the claimant has not alleged any functional limitations due to the residuals of such.

*Id.* Mr. Moldavsky now challenges the adequacy of this explanation.

6

The ALJ is required, under the applicable social security regulations,[8] to evaluate the persuasiveness of all of the medical opinions contained in the record.[9] *See* 20 C.F.R. § 404.1520c(a). The regulations advise that when conducting this analysis, the ALJ should consider, among other factors, the supportability of the opinion,[10] the consistency of the opinion,[11] the medical source's relationship with the claimant (e.g., the length, frequency, purpose, and extent of the relationship), and the medical source's specialization. *See id.* § 404.1520c(c). The most important of these factors are supportability and consistency, and therefore an ALJ must articulate her consideration of these two factors in her written decision.[12] *See id.* § 404.1520c(b)(2).

---

[8] Because Mr. Moldavsky's claim for social security benefits was filed after March 27, 2017, the new regulations regarding the evaluation of medical opinion evidence govern his claim. *See* 20 C.F.R. § 404.1520c.

[9] "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in the following abilities: . . . (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other sense; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513.

[10] Supportability, in this context, refers to the "extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); *see also* 20 C.F.R. §404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

[11] Consistency, as referenced in the regulations, refers to "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the [record]" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); *see also* 20 C.F.R. §404.1520c(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

[12] Among Mr. Moldavsky's arguments is that the ALJ erred by not considering Dr. Magidenko's specialization and treatment relationship when evaluating the persuasiveness of his opinion. *See* Doc. No. 10, at 14–15. However, the ALJ was not required, under the regulations, to articulate how she considered those factors in her decision. *See* 20 C.F.R. § 404.1520c(b)(2). Moreover, it is evident from the decision that the ALJ understood that Dr. Magidenko was Mr. Moldavsky's treating primary care physician. As such, the ALJ did not commit any error on this basis.

Likewise, the ALJ's written decision must include "a clear and satisfactory" explanation of her RFC determination. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Such an explanation must contain enough detail to permit meaningful judicial review. *See Burnett*, 220 F.3d at 119–20. Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Cotter*, 642 F.2d at 705.

This is especially true when there is "conflicting probative evidence in the record." *See Fargnoili*, 247 F.3d at 42. While the ALJ may weigh the evidence and choose what evidence to credit, she cannot reject contradictory evidence for "no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper. *Cotter*, 642 F.2d at 706–07. Failure to mention or explain how this evidence was evaluated is reversible error. *Burnett*, 220 F.3d at 122.

Here, the ALJ's explanation for rejecting Dr. Magidenko's opinion was limited: it basically boils down to the conclusory assertion that the opinion was not supported by Dr. Magidenko's own medical records nor consistent with the other medical evidence and opinions in the record. *See* R. 39. In reaching this conclusion, the ALJ fails to cite to any records that the opinion is allegedly inconsistent with or unsupported by, nor does she provide any concrete examples.[13] *Id.* Moreover, this lack of detail in the ALJ's evaluation of Dr. Magidenko's opinion is not remedied when reading the rest of her decision. Although the ALJ summarizes much of the

---

[13] I agree with Mr. Moldavsky that without any further explanation, it is confusing that the ALJ discredits Dr. Magidenko's opinion as an overestimate of Mr. Moldavsky's limitations and inconsistent with Dr. Goodyear's opinion, while at the same time concluding that Dr. Goodyear's opinion underestimated Mr. Moldavsky's abilities in some areas. *See* Doc. No. 10, at 9. Although there may be a valid reason for this finding, the ALJ needs to provide an explanation for this conclusion that would allow meaningful judicial review.

medical evidence in the record, all that is apparent is that Mr. Moldavsky has suffered for many years from back pain that has been so severe that it required surgery, after other treatments (such as prescription medication and multiple rounds of physical therapy) failed. *See* R. 36–37. And this surgery only provided some relief initially, with his back pain persisting and a new, but related, pain in his knees emerging. R. 37. This pain remains severe enough to require Mr. Moldavsky to use a cane to walk, and he continues to use prescription medication. *See id.* Unclear from the ALJ's summary, though, is how this evidence does not support and is inconsistent with Dr. Magidenko's opinion. As such, more than a conclusory statement is needed in order to permit meaningful judicial review and to confirm that substantial evidence supports the ALJ's opinion.[14]

Aside from the conclusory nature of the ALJ's consistency and supportability analysis, other errors plague the ALJ's evaluation of Dr. Magidenko's opinion. As Mr. Moldavsky points out, *see* Doc. No. 10, at 9–10, the ALJ's consistency analysis should have included a comparison between Dr. Magidenko's opinion and the opinion of his treating pain management physician, Dr. Mikhail Freylikh.[15] Instead, the ALJ dismissed Dr. Freylikh's opinion for a flawed reason: that "it was rendered prior to the onset date at issue." *See* R. 39. This was error. "[T]he mere fact that evidence exists prior to disability onset does not automatically mean that such evidence is

---

[14] To the extent Mr. Moldavsky argues that it was reversible error for the ALJ to not reference the one supporting statement included in Dr. Magidenko's opinion, *see* Doc. No. 10, at 8, I find that—on its own—it does not warrant remand. However, on remand, the ALJ may choose to discuss this statement in her reevaluation of Dr. Magidenko's opinion.

[15] Mr. Moldavsky began seeing Dr. Freylikh for pain management in May 2018. *See* R. 366. A few months later, in August 2018, Dr. Freylikh issued a report summarizing his treatment relationship with Mr. Moldavsky. *See* R. 366–67. At the bottom of the report, Dr. Freylikh opined as to Mr. Moldavsky's ability to work. *See* R. 367. He determined that "because of the present persistent pain and neurological and orthopedic deficiencies[,] Mr. Moldavsky is not able to proceed with any gainful occupation requiring endurance, static posture, bending, kneeling, crawling, climbing ladders, carrying >10lbs or constant or frequent physical efforts beyond mild." *Id.* Mr. Moldavsky insists that this opinion is consistent with Dr. Magidenko's opinion and, if properly considered, would have bolstered the persuasiveness of Dr. Magidenko's opinion.

not relevant, nor does it relieve an ALJ of the duty to explain why evidence predating the onset date would not be afforded substantial weight." *McKean v. Colvin*, 150 F. Supp. 3d 406, 414 (M.D. Pa. 2015); *see also Balthaser v. Kijakazi*, No. 20-6181, 2022 WL 2828848, at *7 (E.D. Pa. July 20, 2022) (Lloret, J.) ("It is not permissible to disregard an opinion, without evaluating it, simply because the opinion predates the alleged disability onset date."). Moreover, her secondary reason for discrediting Dr. Freylikh's opinion—that it was "likely intended as a short-term assessment of the claimant's capabilities as he underwent pain management treatment prior to his eventual surgery"—is based on pure speculation. *See* R. 39. Notably, Dr. Freylikh's opinion was rendered before Mr. Moldavsky began treating with his back surgeon, *see* R. 366–67 (Dr. Freylikh's report dated August 15, 2018), R. 686–92 (earliest note from spine surgeon dated October 2018), and there are no indications in Dr. Freylikh's records to support this assumption, *see* R. R. 366–67, 616–27. While the ALJ may have ultimately viewed Dr. Freylikh's opinion as consistent with her RFC (and perhaps inconsistent with Dr. Magidenko's findings), *see* R. 39, she should, on remand, provide an explanation of her analysis of his opinion and the extent to which it is consistent with Dr. Magidenko's opinion.

Finally, I agree with Mr. Moldavsky that the ALJ's conclusion that Dr. Magidenko's findings are inconsistent with his stated ability to perform personal care activities needs further explanation.[16] *See* Doc. No. 10, at 15–16. At the administrative hearing, Mr. Moldavsky described being able to shower and dress with "some limitation." *See* R. 59–60. More detail was provided in his Function Report, where he described needing a raised toilet seat and a shower chair and that he dressed slowly, but otherwise was able to care for his hair, shave, and feed

---

[16] To be sure, the ALJ's decision to reject Dr. Magidenko's finding that Mr. Moldavsky is unable to drive is supported by substantial evidence. *See* R. 39. Mr. Moldavsky admitted at the hearing that he is able to drive for short distances, *see* R. 59, and therefore it was understandable for the ALJ to limit him to occasional driving.

10

himself. *See* R. 280, 285. Without any further clarification from the ALJ, it is not evident how these admissions are inconsistent with Dr. Magidenko's findings. *See* R. 39. As such, additional explanation is needed in order to determine whether the ALJ's decision to reject Dr. Magidenko's opinion was supported by substantial evidence.[17]

Accordingly, for all of the above reasons, Mr. Moldavsky's request for review will be granted, and the ALJ is instructed on remand to reevaluate the persuasiveness of Dr. Magidenko's opinion as part of her RFC analysis and provide a detailed explanation for her decision.[18]

### B. The ALJ did not commit harmful error by omitting some of the consulting examiner's limitations from the RFC.

Next, Mr. Moldavsky claims that the ALJ erred by failing to incorporate into the RFC the consulting examiner's conclusion that he was limited to "no stooping," instead using her "lay judgment" to find that he could stoop occasionally.[19] Doc. No. 10, at 18–21. This alleged error is harmful because, according to Mr. Moldavsky, the social security regulations mandate a finding of disability in cases where, such as here, the plaintiff is limited to sedentary work and there is an

---

[17] At the end of the ALJ's evaluation of Dr. Magidenko's opinion, she notes that there is no basis in the record for any of limitations related to Mr. Moldavsky's upper extremities. *See* R. 39. For support, the ALJ acknowledges that Mr. Moldavsky had a history of distant left shoulder rotator cuff repair but that he has not alleged any limitations due to this prior injury. *See id.* This is accurate. However, it should be noted that Mr. Moldavsky reported difficulty, due to his lower back pain, with reaching, *see* R. 284, and Dr. Magidenko limited him to only occasional reaching in his opinion, *see* R. 766. On remand, the ALJ may wish to address whether this opined limitation is supported by or consistent with the rest of the record.

[18] The ALJ's failure to provide a satisfactory explanation for rejecting Dr. Magidenko's opinion was not harmless error. Dr. Magidenko's opinion included restrictive findings that had they been incorporated into the RFC, Mr. Moldavsky likely would have been unable to perform the jobs identified by the vocational expert and been deemed disabled. *Compare* R. 765 (Dr. Magidenko's opinion that Mr. Moldavsky is only able to sit for three hours during the workday), *with* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983) (defining sedentary work as requiring the ability to sit for six hours in a workday). Therefore, it is necessary to confirm whether substantial evidence supported the ALJ's decision to discredit the opinion.

[19] The Social Security Administration defines "stooping" as "bending the body downward and forward by bending the spine at the waist." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). To be able to perform an activity such as stooping "occasionally," the claimant must be able to do it "from very little to up to one-third of the time." SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996).

additional restriction to "no stooping." *Id.* The Commissioner disputes Mr. Moldavsky's interpretation of the regulations, but nonetheless, maintains that the ALJ's rejection of the "no stooping" limitation was proper. *See* Doc. No. 11, at 12–15.

The facts relevant to resolving this claim are relatively straightforward. On October 3, 2019, a consulting physician, Dr. Goodyear, performed an independent physical examination of Mr. Moldavsky to assess his work-related abilities. *See* R. 734–47. Following the examination, Dr. Goodyear issued a detailed report and accompanying opinion. *Id.* Among Dr. Goodyear's conclusions was that Mr. Moldavsky was never able to stoop.[20] R. 742. The ALJ did not find this

---

[20] The ALJ summarized Dr. Goodyear's opinion as to Mr. Moldavsky's work-related abilities as follows:

> Dr. Goodyear completed a medical source statement of the claimant's ability to perform work related physical activities and found him to be capable of lifting/carrying up to 20 pounds occasionally, sitting for up to six hours in an eight hour workday, standing for two hours, and walking one hour. He would require the use of a cane for ambulation. He should engage in no stooping, kneeling, crouching, crawling, or climbing of ladders or scaffolds, could occasionally climb stairs and ramps, and frequently balance. He would have no manipulative limitations, and could occasionally use the left foot for operation of foot controls and frequently use the right foot. He should no more than occasionally be required to operate a motor vehicle and have no more than frequent exposure to vibrations.

R. 38.

conclusion to be entirely consistent with the record,[21] and instead chose to limit Mr. Moldavsky to only occasional stooping.[22] *See* R. 38–39.

Mr. Moldavsky takes issue with the ALJ's determination, arguing that the ALJ improperly imposed her lay judgment to determine that he was able to occasionally stoop. *See* Doc. No. 10, at 18–21. He contends that this error was harmful: had the ALJ correctly restricted him to no stooping, she was obligated, under the social security regulations, to find him to be disabled. *Id.* To support this proposition, Mr. Moldavsky relies exclusively on the following excerpt from Social Security Ruling 96-9p:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and *a finding that the individual is disabled would usually apply*, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.

---

[21] The ALJ's full assessment of Dr. Goodyear's opinion is as follows:

> The undersigned finds somewhat persuasive the opinion of Dr. Goodyear, particularly as to limitations in certain postural activities (kneeling, crawling, climbing ropes and scaffolds, and use of foot controls) and certain environmental restrictions (hazards and use of a motor vehicle), as well as necessity for use of a cane while ambulating. However, the undersigned finds Dr. Goodyear's exertional limitations to be an underestimate of the claimant's true level of limitation in those areas, based upon the available medical evidence and the claimant's subjective testimony. The entirety of the record would indicate that the claimant is somewhat more limited as to exertional activities such as lifting/carrying and standing/walking, as well as use of foot controls bilaterally, than proposed by Dr. Goodyear, **although he would be somewhat less limited as to certain postural activities (crouching and stooping) with the ability to perform these activities occasionally.** Thus, the opinions of the DDS consultants have been found more persuasive, as they are more consistent with the longitudinal record as discussed above.

R. 38–39 (emphasis added).

[22] This conclusion aligns with the opinions of both state agency reviewing physicians. *See* R. 98 (Dr. DeLeo's opinion that Mr. Moldavsky could stoop occasionally); R. 110 (Dr. Park's opinion as to same).

SSR 96-9, 1996 WL 374185, at *8 (July 2, 1996) (first emphasis in original); *see also* Doc. No. 10, at 20 (plaintiff's brief).[23] But his reliance on this excerpt is unconvincing.

First, a plain reading of this excerpt does not automatically compel a finding of disability when a claimant is restricted to sedentary work and no stooping; it only suggests that such a finding "would usually apply." SSR 96-9, 1996 WL 374185, at *8 (July 2, 1996). Second, as the Commissioner points out, the very next sentence of the SSR confirms that such a finding is not mandated: it advises that "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96-9, 1996 WL 374185, at *8 (July 2, 1996); *see also* Doc. No. 11, at 13. Based on a reading of the entire paragraph, many other courts, when confronted with similar challenges, have concluded that this SSR simply instructs ALJs to consult with a vocational expert, not that they must find the claimant disabled. *See, e.g.*, *Lauer v. Apfel*, 169 F.3d 489, 492–93 (7th Cir. 1999).[24]

Here, the ALJ abided by this guidance, and after prompting from Mr. Moldavsky's non-attorney representative at the administrative hearing, the ALJ confirmed with the vocational expert that an individual who cannot stoop (in addition to the other limitations reflected in the RFC) is still able to perform the jobs previously identified. *See* R. 72 (noting that the Dictionary of Occupational Titles ("DOT") does not list stooping among the physical demands required for

---

[23] Although Social Security Rulings "do not have the force and effect of the law or regulations," they are "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Allen v. Barnhart*, 417 F.3d 396, 402 n.3 (3d Cir. 2005) (quoting *Heckler v. Edwards*, 465 U.S. 870, 874 n.3 (1984), then *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).

[24] *See also Louis v. Comm'r Soc. Security*, 808 F. App'x 114, 118 n.3 (3d Cir. 2020) (not precedential) ("The Ruling does not mandate a finding of disability; rather it instructs that 'consultation with a vocational resource may be particularly useful' in cases where the claimant 'is limited to less than occasional stooping." (quoting SSR 96-9, 1996 WL 374185, at *8 (July 2, 1996))); *Jones v. Colvin*, No. 15-1126, 2016 WL 8716260, at *4 (Sept. 30, 2016) (Pappert, J.); *Wilbon v. Berryhill*, No. 18-2697, 2020 WL 10050790, at *7–9 (N.D. Tex. Mar. 6, 2020) (collecting cases); *Duncan v. Colvin*, 593 F. App'x 668 (9th Cir. 2015) (Mem.); *Mullens v. Barnhart*, 165 F. App'x 611, 614–15 (10th Cir. 2006).

14

those positions). As such, even if the ALJ should have further limited Mr. Moldavsky to no stooping, she did not commit harmful error.

Nevertheless, because this matter will be remanded on other grounds, it would be prudent for the ALJ to take that opportunity to reconsider Mr. Moldavsky's ability to stoop and provide a sufficient explanation for her decision.

### C. Mr. Moldavsky's claim that the ALJ erred at step five need not be resolved on appeal.

Mr. Moldavsky's final claim attacks the ALJ's step five determination that he is capable of performing other work. *See* Doc. No. 10, at 21–22. In reaching this conclusion, the ALJ relied on the vocational expert's response to a hypothetical question asking whether an individual with Mr. Moldavsky's RFC could perform any jobs in the national economy. *See* R. 41. Mr. Moldavsky maintains that the hypothetical question was deficient, and therefore the vocational expert's testimony does not constitute substantial evidence to support her decision. *See* Doc. No. 10, at 21–22.

An ALJ may rely on a vocational expert's testimony to find, at step five, that the claimant has the RFC to perform other jobs in the national economy. *See Rutherford*, 399 F.3d at 553–54. However, in order for the vocational expert's testimony to be considered substantial evidence, the ALJ's hypothetical question "must reflect all of a claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Significantly, this only means that the ALJ "must accurately convey to the vocational expert all of a claimant's *credibly established* limitations," not every limitation *alleged* by the claimant. *Rutherford*, 399 F.3d at 554. As such, "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Id.* at 554 n.8.[25]

---

[25] As the Third Circuit explained:

15

That is the case here. Mr. Moldavsky asserts that the hypothetical question—which accurately reflected the ALJ's RFC determination—was deficient solely because it did not include the additional limitations assessed by Dr. Magidenko and Dr. Goodyear that are the subject of his previous claims.[26] *See* Doc. No. 10, at 21–22. Given that I have already granted remand on one of those previous claims, it unnecessary for me to rule on the present claim at this time, especially considering that the ALJ's ultimate RFC determination may change on reconsideration and render this issue moot.

## IV.   CONCLUSION

For the reasons explained above, Mr. Moldavsky's request for review is **GRANTED**. The ALJ's explanation for rejecting the treating physician's opinion was insufficient such that I

---

> [A] claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like [plaintiff's] here) are really best understood as challenges to the RFC assessment itself.

*Rutherford*, 399 F.3d at 554 n.8.

[26] At the administrative hearing, the ALJ questioned the vocational expert as follows:

> Q: Thank you. Assume a hypothetical individual limited to lifting and carrying a maximum of ten pounds, standing and walking two hours, sitting six hours, occasional postural activities except no crawling, kneeling, or climbing ladders, ropes, or scaffolds, occasional use of foot controls, occasional operation of a motor vehicle, occasional exposure to vibration, no work around hazards, accommodates the use of a cane for ambulation. He has to stand for 3 to 5 minutes every 30 minutes. Could such an individual perform past work?
>
> A: No.
>
> Q: Other work in the national economy?
>
> A: Yes. Brimer, that's B-R-I-M-E-R, 700.687-018, sedentary, SVP 2, unskilled, nationally 33,771 with a plus or minus variance of 988. Circuit board inspector, 726.684-110, sedentary, SVP 2, unskilled, nationally 67,494 with a plus or minus variance of 2,176. Plastic design applier, 690.686-046, sedentary, SVP 1, unskilled, nationally 32,491 with a plus or minus variance of 873.

R. 68. The hypothetical question used in the above exchange is identical to the RFC that the ALJ ultimately attributed to Mr. Moldavsky. *See* R. 35.

was prevented from determining whether substantial evidence supported the ALJ's decision. Therefore, the final decision of the Commissioner of Social Security is **REVERSED,** and this matter is **REMANDED** to the Commissioner for further proceedings in accordance with this opinion. An appropriate order follows.

BY THE COURT:

_s/Pamela A. Carlos_____
PAMELA A. CARLOS
U.S. Magistrate Judge